## CITIZENS' INS. CO. v. ADAMS et al.

No. 8275—Opinion Filed May 21, 1918.

Rehearing Denied Jan. 21, 1919.

(177 Pac. 364.)

1. **Insurance—Action on Premium Agreement—Evidence—Execution of Contract.**

In an action to recover premiums on an open policy of cotton insurance, which contains the proviso. "In consideration of the stipulations herein contained and the premium to be paid." the policy may be properly admitted in evidence in proof of the execution of the contract of insurance on the part of the insurer.

2. **Same—Premium Agreement — Authority of Agent — Ratification — Question for Jury.**

Where the execution of a premium agreement in connection with an insurance policy, shown on its face to have been executed on the part of the insured by an agent, is questioned, and there is evidence from which an inference may be drawn that the agent executing said instrument had authority so to do, and also evidence from which an inference may be drawn that, if the agent did not have such authority, the insured subsequently ratified the unauthorized act of the agent, raises questions of fact to be passed upon by the jury. and such instrument should be submitted to the jury under proper instructions.

(Syllabus by Collier. C.)

Error from District Court, Pottawatomie County; Chas. B. Wilson, Jr., Judge.

Action by the Citizens' Insurance Company against P. H. Adams and another. Demurrer to plaintiff's evidence sustained, and judgment rendered for defendants, and plaintiff brings error. Reversed and remanded.

W. P. Langston and W. L. Chapman, for plaintiff in error.

E. C. Stanard, J. H. Wahl, and C. H. Ennis. for defendants in error.

Opinion by COLLIER. C. This was an action brought by the plaintiff in error against the defendants in error to recover premiums in the sum of $474.68. on an open policy of cotton insurance. Hereinafter the parties

will be designated as they were in the trial court.

Upon conclusion of the evidence, the court sustained a demurrer thereto, and rendered judgment for the defendant, to which the plaintiff duly excepted. Timely motion was made by the plaintiff for a new trial, which was overruled, excepted to, and error brought to this court.

There was evidence on the part of the plaintiff that the insurance was written at the request of one P. H. Adams and said policy delivered at the office of the defendants by giving the same to the bookkeeper of the defendants; that prior to the delivery of said policy the defendants were insured by the plaintiffs under a special verbal agreement, which was temporary, and to be good until the receipt of the policy sought by the defendants.

The plaintiff offered in evidence the said policy, and the schedule of rates for the payment of premiums thereon. The said schedule of rates was signed by the defendants, by J. S. White, who testified that he was the bookkeeper of the defendants; that he kept all of the books of the defendant and issued all of the reports and sent out all of the vouchers; that he received the policy in question, and that it was brought to the office and put on the desk where the witness was, and the witness was informed that it was the policy or agreement, or something, and when the other parties came in to show it to them; that he did not remember whether or not he showed the policy to them; that he did not think he did; that he signed the name of Adams & Melson to the premium agreement attached to the policy; that he did not remember whether or not he showed the premium agreement to Adams & Melson; that he did not believe he did; that he did not know what he did with it after he signed it; that he did not remember anything about the policy, except that he signed something there, and thought it was a receipt; that he did not sign all of the agreements for Adams & Melson; that he did not sign anything except checks, and bills of lading with checks attached to them; that Adams & Melson were away from the office a good deal of the time, but that he did not know as they gave him authority to sign anything to bind them in any manner; that after the premium agreement was signed he took it to the bank, and placed it in the bank for safekeeping; that he did not remember when he received the policy; that he probably received it the same day; that at the time he was the only bookkeeper and the only clerk of Adams & Melson,

and took care of the business and all of the books in the office; that the only authority he had in the office was to sign bills of exchange, checks with bills of lading attached, to be paid by the bank, and if it was not attached to the ticket checks were not to be paid by the bank.

Adams testified that he and Melson were engaged in the cotton business; that Mr. White was employed by the firm of Adams & Melson at that time; that Mr. White kept the books, and made up invoices, and sent out and received bills of exchange when they came there to the bank to be paid off; that White was authorized to sign nothing but bills and checks with documents attached to them received by the bank; that he did not see the premium agreement attached to the policy; that he did not have any conversation with the insurance agent about the premium agreement; that Mr. White did not submit to him the premium agreement for his examination before it was signed by him and returned; that he did not know whether White took the matter up with Melson or not; that Mr. White did not have full authority to sign anything that was necessary for him to sign during his absence; that he had authority to make up invoices to other firms that they were shipping to, and sign their names to the invoices, that he had the right to O. K. a draft with bill of lading attached to it, or write out a check and attach a cotton ticket to it; that he had authority to make reports of cotton under the provisions of the policy, as he understood it, and he thought he did make such reports; that he made such reports under the direction of himself and Mr. Melson; that the premium agreement was not signed in his presence; that he did not know the policy was there until the auditor of the insurance company came; that he knew they were making reports on certain amount of cotton; that he did not know whether he saw the policy or not; that the first time he saw it was when he went to the bank to get it, to give it to the auditor, when he demanded that it be canceled; that he knew they had the policy, because Mr. White told him, several days after he put it in the safety deposit box, and when the auditor came he went to the safety deposit box and got it, and delivered it to him; that he did not know how long the policy had been there before the auditor came; that he thinks he talked with the insurance agent about this policy after it was issued; and that the only disagreement had between the agent, the auditor, and himself was the amount of cotton to be reported under the policy.

Thereupon the defendant offered in evidence the policy of insurance, to which was attached the premium agreement, which was signed by "Adams & Melson, Assured, by J. S. White." The court sustained an objection to the introduction of said policy, to which the plaintiff duly excepted. The plaintiff then announced its desire to stand on its offer of evidence. Thereupon the defendant demurred to the evidence, which was sustained, to which action of the court the plaintiff duly excepted, and judgment was rendered for the defendant.

It is contended by the plaintiff that the court committed error in refusing to admit in evidence the policy of insurance, and with this contention we agree. The policy in this case provides:

"In consideration of the stipulation herein named. and the premiums to be paid," etc.

And it in no way refers in the body of the policy to the written agreement, or to the payment of the premium which is attached to said policy. We therefore think that, independent of the premium agreement which was attached to said policy, said policy itself was admissible in evidence, leaving the burden upon the plaintiff to prove what the premiums agreed to be paid were. If the agreement as to the payment of premiums was in writing, then it would be incumbent upon the plaintiff to have proven the execution of said premium agreement by the defendants or their duly authorized agent. or that; after the execution of said premium agreement by one unauthorized to execute the same, the said agreement was ratified by them in order to make said agreement as to premiums admissible in evidence.

Whether or not the premium agreement was admissible in evidence depends upon whether or not the defendants by their duly authorized agent executed the same, and whether or not, if the said premium agreement was executed by White without authority, that defendants afterwards ratified the action of White. The question of the authority of white to execute, in the name of the defendants. the premium agreement, and as to whether or not. after the execution of the same by White, the defendants ratified the action of White, were questions of fact, which should have been submitted to the jury. The court committed reversible error in excluding as evidence the said policy of insurance.

The policy of insurance should have been admitted in evidence, and, had it been admitted, the inferences and conclusions that might have been drawn from the evidence raised a question of fact as to the execution of said agreement for the payment of premiums upon said policy, and also whether or not, if the said premium agreement was executed in the name of the plaintiff by an unauthorized agent, they subsequent to the execution thereof ratified said execution. The court. with the policy in evidence, would have committed reversible error in sustaining the demurrer to the evidence.

This cause is reversed and remanded.

By the Court: It is so ordered.